## IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

_____ )
                                     )
UNITED STATES,                       )
                                     )
    **Plaintiff,**                     )
                                     )
      **v.**                         )    **CIVIL ACTION NO. _____**
                                     )
**VIRGIN ISLANDS WATER AND**         )
**POWER AUTHORITY,**                 )
                                     )
    **Defendant.**                    )
_____ )

## COMPLAINT

The United States of America ("United States"), by the authority of the Attorney General and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action against the Virgin Islands Water and Power Authority ("VIWAPA") for violations of the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. §§ 7401 *et seq.*, at the Krum Bay Generating Facility in St. Thomas, U.S. Virgin Islands ("USVI") ("St. Thomas Facility") and at the Cruz Bay Facility in St. John, USVI ("St. John Facility").

2.      Pursuant to Sections 113 and 502(a) of the Act, 42 U.S.C. §§ 7413 and 7661a(a), the United States seeks injunctive relief and the assessment of civil penalties for violations of: Title V of the Act, 42 U.S.C. §§ 7661 – 7661f; Section 112 of the Act, 42 U.S.C. § 7412; the Virgin Island Air Pollution Control Act Rules and Regulations ("VI-APCAR&R") Title 12, Chapter 9, Sections 206-51 through 206-92, which is the EPA-approved U.S. Virgin Islands' Title V operating permit program ("VI Title V Operating Permit Program"); and violations of permits issued pursuant to the VI Title V Operating Permit Program.

1

3.      Pursuant to Sections 113 and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, the United States seeks injunctive relief and the assessment of civil penalties for violations of:  the Prevention of Significant Deterioration ("PSD") provisions of the CAA, 42 U.S.C. §§ 7470-92; the PSD regulations promulgated and/or adopted and approved by EPA under Sections 110 and 114 of the CAA; and the PSD permits issued pursuant to the PSD program and PSD regulations.

4.      Pursuant to Sections 113 and 111 of the Act, 42 U.S.C. §§ 7413 and 7411, the United States seeks injunctive relief and the assessment of civil penalties for violations of Section 111 of the Act, 42 U.S.C. § 7411, and the New Source Performance Standards ("NSPS") promulgated pursuant to Sections 111 and 114 of the CAA, 42 U.S.C. §§ 7411 and 7414.

5.      Pursuant to Sections 113 and 114 of the Act, 42 U.S.C. §§ 7413 and 7414, the United States seeks injunctive relief and the assessment of civil penalties for violations of Section 114 of the Act and the recordkeeping and monitoring requirements promulgated pursuant to the Act, or included in construction and/or operating permits issued pursuant to the CAA.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to Sections 113(b) and 304(a) of the CAA, 42 U.S.C. §§ 7413(b) and 7604(a), and 28 U.S.C. §§ 1331, 1345, 1355 and 1367.

7.      Venue is proper in this District under Sections 113(b) and 304(c) of the CAA, 42 U.S.C. §§ 7413(b) and 7604(c), and 28 U.S.C. §§ 1391(b), (c) and 1395(a) because the violations alleged herein occurred in this District.

## NOTICES

8.      Pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), the United States provided notice of the violations of the applicable implementation plan alleged below to

VIWAPA and the Virgin Islands Department of Planning and Natural Resources ("VIDPNR") and more than thirty days have elapsed between issuance of the notices and commencement of this civil Complaint.

## DEFENDANT AND FACILITIES

I.     **Defendant**

9.     VIWAPA is a semi-autonomous governmental agency of the Government of the Virgin Islands and is considered a not for profit public corporation.  VIWAPA currently owns and operates the St. Thomas Facility and the St. John Facility (jointly the "Facilities").

10.     VIWAPA is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

II.     **St. Thomas Facility**

11.     The St. Thomas Facility provides electricity and water to most of St. Thomas and St. John.

12.     The St. Thomas Facility is permitted to operate seven oil-fired gas turbines to generate electricity:  Unit 12, 14, 15, 18, 22, 23 and 25; one Heat Recovery Steam Generating Unit (HRSG), which is not fuel-fired but recovers exhaust heat from Units 15 and/or 18 to produce steam; and two Boilers:  Boiler 11 and Boiler 13.

13.     Units 12, 14, 15, 18, 22, 23, 25, the HRSG and Boilers 11 and 13 all discharge emissions from smokestacks during periods of operation.

   **a.     St. Thomas PSD Permits**

14.     On February 11, 1992, pursuant to Section 165(a) of the CAA, 42 U.S.C. § 7475 and 40 C.F.R. § 52.21, EPA issued a PSD permit ("1992 PSD Permit") to VIWAPA for the operation of existing Unit 15, and for the construction and operation of Unit 18 and the HRSG.

15.     On August 24, 1994, pursuant to Section 165(a) and 40 C.F.R. § 52.21, the 1992

PSD Permit was modified ("1994 PSD Permit") to, among other things, allow Units 15 and 18 to operate in combined cycle though the HRSG.

16.     On January 3, 2001, pursuant to Section 165(a) of the CAA and 40 C.F.R. § 52.21, EPA issued a PSD permit ("2001 PSD Permit") to VIWAPA for the construction and operation of Unit 22.

17.     On September 8, 2004, pursuant to Section 165(a) of the CAA and 40 C.F.R. § 52.21, EPA issued a PSD permit to VIWAPA for the construction and operation of Unit 23 ("Unit 23 PSD Permit").

18.     On February 20, 2007, pursuant to Section 165(a) of the CAA and 40 C.F.R. § 52.21, EPA revised and consolidated the 1994 PSD Permit for Units 15, 18, and the HRSG and the 2001 PSD Permit for Unit 22 into a single permit ("St. Thomas Consolidated PSD Permit"), as modified on June 18, 2007.

**b.      St. Thomas Title V Permit**

19.     On December 31, 2003, pursuant to Section 206-20 of the VI-APCAR&R Title 12, Chapter 9, VIDPNR issued VIWAPA Title V Operating Permit No. STT-TV-003-03 ("St. Thomas Title V Operating Permit").  The St. Thomas Title V Operating Permit includes the St. Thomas Consolidated PSD Permit conditions, the requirements found in 40 C.F.R. §§ 60.330 – 60.335 ("NSPS Subpart GG"), and other CAA requirements.

20.     On July 2, 2008, VIWAPA submitted a renewal application for the St. Thomas Title V Operating Permit to VIDPNR.  VIDPNR is still processing the renewal application.

**c.      St. Thomas Unit 25 Operating Permit**

21.     On March 15, 2012, pursuant to Section 206-20 of the VI-APCAR&R Title 12, Chapter 9, VIDPNR issued an Air Pollution Control Program Authority to Construct Permit

authorizing VIWAPA to construct and install Unit 25 ("Unit 25 Operating Permit").

**III.     St. John Facility**

22.     The St. John Facility consists of a 2.5 MW diesel engine that was installed and began operation in 1984.

23.     The diesel engine is a 2.5 MW diesel engine with a site rating of greater than 500 brake horsepower.

24.     On April 28, 2005, pursuant to Section 206-20 of the VI-APCAR&R Title 12, Chapter 9 and Section 206-51 of the VI Title V Operating Permit Program, VIDPNR issued VIWAPA a Title V Operating Permit for the St. John Facility (the "St. John Title V Operating Permit").

**CAA STATUTORY BACKGROUND**

25.     The CAA is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1).

**I.     The National Ambient Air Quality Standards**

26.     Section 109 of the CAA, 42 U.S.C. § 7409, requires EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued under Section 108 of the CAA, 42 U.S.C. § 7408.

27.     Pursuant to Sections 108 and 109 of the CAA, 42 U.S.C. §§ 7408 and 7409, EPA has identified carbon monoxide ("CO") and nitrogen oxide ("$NO_x$") as criteria pollutants and has promulgated NAAQS for these pollutants.  40 C.F.R. §§ 50.08 and 50.11.

28.     Under Section 107(d) of the CAA, 42 U.S.C. § 7407(d), each state and territory of

5

the United States is required to designate areas within its boundaries where air quality is better or worse than the NAAQS for each regulated air pollutant. An area that meets the NAAQS for a particular pollutant is designated as an "attainment" area. An area that does not meet the NAAQS is designated as a "nonattainment" area. An area that cannot be designated due to insufficient data is listed as "unclassifiable."

29.     Pursuant to 40 C.F.R. § 81.356, St. Thomas and St. John, USVI, have been designated as attainment for CO and $NO_X$.

        **a.     Virgin Islands State Implementation Plan**

30.     To achieve the objectives of the NAAQS, Section 110 of the CAA, 42 U.S.C. § 7410, requires each state and territory of the United States to adopt and submit to EPA for approval a plan that provides for the attainment and maintenance of the NAAQS in each air quality control region. The EPA-approved plan is known as a State Implementation Plan ("SIP").

31.     Pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, the USVI submitted to EPA for approval various rules developed for the attainment and maintenance of the NAAQS in the USVI. The SIP and federal regulations, promulgated pursuant to Section 7410 of the Act or promulgated or approved pursuant to regulations promulgated pursuant to Section 7601(d) of the Act are the USVI's "applicable implementation plan" within the meaning of Section 302(q) of the CAA, 42 U.S.C. § 7602(q).

## II.     The Prevention of Significant Deterioration (PSD) Requirements

32.     Section 160 through Section 169B of Title I of the CAA, 42 U.S.C. §§ 7470-7492, set forth requirements for the prevention of significant deterioration of air quality in air quality control regions designated as either "attainment" or "unclassifiable." These requirements are designed to protect public health and welfare, assure that economic growth will occur in a

manner consistent with preserving existing air resources, and subject any decision to allow increased air pollution to a public decision making process.

33.     Section 165(a) of the CAA, 42 U.S.C. § 7475(a), requires that no major emitting facility on which construction is commenced after August 7, 1977, may be constructed in any area unless various requirements specified in that section are met, including obtaining a permit, which requires, among other things, the application of best available control technology ("BACT") for each pollutant emitted from the facility that is subject to regulation under the PSD program and monitoring as may be necessary to control emissions.

34.     Section 169(1) of the CAA, 42 U.S.C. § 7479(1), includes in the definition of "major emitting facility" fossil-fueled fired steam electric plants that emit or have the potential to emit one hundred tons per year or more of any pollutant regulated under the PSD program.

35.     Pursuant to Section 169A(a)(4), 42 U.S.C. 7491(a)(4), EPA promulgated "PSD regulations" at 40 C.F.R. § 52.21.  EPA incorporates these regulations into the applicable implementation plan in a state, territory or commonwealth where a state, territory or commonwealth PSD plan has not been submitted to, or has been disapproved by EPA.

36.     On June 19, 1978, EPA disapproved the PSD plan submitted by the USVI and incorporated the federal PSD regulations into the Virgin Islands State Implementation Plan. *See* 68 Fed. Reg. 74491. 40 C.F.R. § 52.2729.

37.     EPA has not delegated implementation of the PSD permitting regulations to the VIDPNR and therefore administers the PSD program in the USVI.  40 C.F.R. § 52.2779.

## III.    New Source Performance Standard (NSPS) Provisions

38.     Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires EPA to publish and periodically revise a list of categories of stationary sources that cause or contribute

significantly to air pollution that may reasonably be anticipated to endanger public health. Once a category is included on the list, Section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B) requires EPA to promulgate a federal standard of performance for new sources within the category, also known as a New Source Performance Standard ("NSPS").

39.    Under Section 111 of the Act, 42 U.S.C. § 7411, "new source" is defined as any stationary source, the construction or modification of which is commenced after the publication of the NSPS regulations or proposed NSPS regulations applicable to such sources. 42 U.S.C. § 7411(a)(2). "Stationary source" is defined as a building, structure, facility, or installation which emits or may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

40.    Pursuant to Sections 111(b)(1)(B) and 114 of the CAA, 42 U.S.C. §§ 7411(b)(1)(B) and 7414, EPA promulgated regulations that contain general provisions applicable to all NSPS sources. See 40 C.F.R. Part 60, Subpart A, §§ 60.1- 60.19 ("NSPS General Provisions").

41.    Pursuant to Sections 111(b)(1)(B) and 114 of the CAA, 42 U.S.C. §§ 7411 and 7414, EPA promulgated 40 C.F.R. §§ 60.330 - 60.335 (NSPS Subpart GG), which, in accordance with 40 C.F.R. § 60.330(a)-(b), is applicable to stationary gas turbines that commence construction, modification or reconstruction after October 3, 1977, with a heat input at peak load equal to or greater than 10.7 gigajoules (10 million Btu) per hour, based on the lower heating value of the fuel fired, with exceptions provided in 40 C.F.R. § 60.332(e) and (j).

42.    Pursuant to Sections 111(b)(1)(B) and 114 of the CAA, 42 U.S.C. §§ 7411 and 7414, EPA promulgated 40 C.F.R. §§ 60.4300-4420 ("NSPS Subpart KKKK"), which in accordance with 40 C.F.R. § 60.4305(a) is applicable to stationary combustions turbines that commenced construction, modification or reconstruction after February 18, 2005, with a heat

input at peak load equal to or greater than 10.7 gigajoules (10 million Btu), based on higher heating value of the fuel, with exemptions provided in 40 C.F.R. § 60.4310.

       **a.     NSPS General Provisions and Definitions**

43.     The NSPS General Provisions are applicable to any NSPS affected source unless otherwise specified in the specific NSPS. 40 C.F.R. § 60.1(a) and (b) and 60.7(h).

44.     The NSPS General Provisions apply to the owner or operator of any stationary source that contains an affected facility, the construction or modification of which is commenced after the publication in Part 60 of any standard (or, if earlier, the date of publication of any proposed standard) applicable to that facility, unless otherwise specified in an applicable NSPS Subpart.  40 C.F.R. §§ 60.1 and 60.7(h).

45.     "Owner or operator," under 40 C.F.R. § 60.2 means "any person who owns, leases, operates, controls, or supervises an affected facility or stationary source of which an affected facility is part."

46.     "Affected facility," under 40 C.F.R. § 60.2 means, "any apparatus to which a standard is applicable."

47.     An owner or operator of a facility that utilizes stationary gas turbines subject to NSPS Subpart GG must comply with both NSPS Subpart GG and the NSPS General Provisions, unless otherwise specified in NSPS Subpart GG.  40 C.F.R. §§ 60.1, 60.7(h) and 60.330.

48.     "Stationary gas turbine" is defined as "any simple cycle gas turbine, regenerative cycle gas turbine or any gas turbine portion of a combined cycle steam/electric generating system that is not self-propelled.  It may, however, be mounted on a vehicle for portability." 40 C.F.R. § 60.331(a).

       **b.**     **NSPS General Duty Requirement**

    49.     Pursuant to the NSPS General Provisions, an owner or operator of a stationary source subject to any NSPS regulation must "to the extent practicable, and at all times, including periods of startup, shutdown, and malfunction, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions." 40 C.F.R. § 60.11(d), known as the General Duty Requirement.

**IV.**   **National Emissions Standards for Hazardous Air Pollutants Provision**

    50.     Section 112 of the Act requires the Administrator to publish a list of hazardous air pollutants (HAPs), a list of categories and subcategories of major and area sources of listed HAPs, and to promulgate regulations establishing emission standards, referred to as National Emissions Standards for Hazardous Air Pollutants (NESHAPs) for each category or subcategory of major and area sources of HAPs.

    51.     Section 112(i)(3)(A) prohibits the operation of a source in violation of any emissions standard, limitation or regulation issued pursuant to Section 112, and directs the Administrator to set a compliance deadline for existing sources that is no more than 3 years after the effective date of the standard.

    52.     On June 15, 2004, under the authority of Sections 112 and 114 of the Act, EPA promulgated the "National Emission Standards for Hazardous Air Pollutants: Stationary Reciprocal Internal Combustion Engines," (the "RICE NESHAP"), 40 C.F.R. Part 63, Subpart ZZZZ, §§ 63.6580- 63.6675. The RICE NESHAP has been modified several times, the most recent of which was January 30, 2013.

**V.**    **Title V of the Act, VI Title V Operating Program**

53.    Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program whose primary purpose is to consolidate all CAA requirements, including PSD, NSPS and SIP operating permit requirements, applicable to a source subject to Title V requirements into a Title V Operating Permit.

54.    Pursuant to Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), EPA promulgated regulations implementing the requirements of Title V of the CAA, 42 U.S.C. §§ 7661-7661f  to establish the minimum elements of a Title V operating permit program to be administered by any air pollution control agency.  57 Fed. Reg. 32250 (July 21, 1992); 40 C.F.R. Parts 70 and Part 71.  States were required to submit a permitting program, developed in accordance with Part 70, to EPA for approval and authorization to administer a Title V operating permit program.  Section 502(d) of the CAA, 42 U.S.C. § 7661a(d), 40 C.F.R. § 70.4.

55.    The Virgin Islands submitted and EPA approved the VI Title V Operating Permit Program on January 16, 2001.  Accordingly, the USVI implements Chapter 9, Sections 206-51 through 206-92 of the VI-APCAR&R (VI Title V Operating Permit Program), submitted and approved pursuant to Section 502(d) of the CAA, 42 U.S.C. § 7661a(d) and 40 C.F.R. § 70.4(a)(1)(i).

56.    Title V of the CAA, 42 U.S.C. §§ 7661-7661f, 40 C.F.R. Part 70, and the VI Title V Operating Permit Program, include, in part, the following requirements: (1) enforceable emission limits and control requirements; (2) a compliance schedule, if appropriate; (3) record keeping, (4) reporting and (5) monitoring requirements.

57.    Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), 40 C.F.R. § 70.6(6)(i), and Section 206-92  of the VI Title V Operating Permit Program, make it unlawful for any person to

11

violate or operate, among other things, a major source except in compliance with a Title V Operating Permit.

58.    Pursuant to Section 206-61(d) of subchapter 206 of Chapter 9 of the VI-APCAR&R, applications for permit renewal shall be submitted at least 6 months prior to the date of expiration of a permit.

59.    Pursuant to the VI Title V Operating Permit Program if the owner or operator of an affected facility timely submits a complete application for a permit renewal consistent with Section 206-62 of subchapter 206 of Chapter 9 of the VI-APCAR&R, the permit shall not expire until the renewed permit has been issued or denied, and any permit shield that may be granted pursuant to Section 206-71(e) may extend beyond the original permit term until renewal.

60.    Pursuant to Section 206-68 of the VI-APCAR&R Title 12, Chapter 9, submittal of a complete permit application by a source required to obtain a Part 70 operating permit in accordance with Section 206-51 of the VI-APCAR&R Title 12, Chapter 9, within the timeframe specified in Section 206-61 of the VI-APCAR&R Title 12, Chapter 9, shields the source from enforcement action from operating without a permit until such time that the permit is issued.

**VI.    <u>Statutory Enforcement Authority</u>**

61.    Sections 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), provides that EPA may bring a civil action in accordance with Section 113(b) of the CAA when EPA finds that any person has violated or is in violation of an applicable implementation plan or permit, promulgated pursuant to the PSD provisions of the CAA, 42 U.S.C. §§ 165 through 169(B), and incorporated into the Virgin Islands State Implementation Plan pursuant to Section 110 of the Act, 42 U.S.C. § 7410.

62.    Sections 113(a)(3) of the CAA, 42 U.S.C. § 7413(a)(3), provides that EPA may

bring a civil action in accordance with Section 113(b) of the CAA when EPA finds that any person has violated or is in violation of CAA requirements [other than requirements specified in Section 113(a)(1) and (a)(2) of the CAA], which includes the NSPS provisions of Section 111 of the CAA, 42 U.S.C. § 7411 and 40 C.F.R. Part 60, Subparts A, GG and KKKK, Title V of the CAA, 42 U.S.C. §§ 7661-7661f, the federal emissions standards for hazardous air pollutants at Section 112 of the Act, 42 U.S.C. § 7412, the Virgin Islands State Implementation Plan, and any permit(s) issued pursuant to Title V of the Act and the VI Title V Operating Permit Program.

63.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction and/or for a civil penalty of up to $25,000 per day for each violation of the CAA.  Under the Debt Collection Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, as amended, penalties of not more than $27,500 may be assessed for each violation that occurs after January 30, 1997 through March 15, 2004, penalties of not more than $32,500 may be assessed for each violation that occurs after March 15, 2004 through January 12, 2009, and penalties of not more than $37,500 may be assessed for each violation that occurs after January 12, 2009.  See 73 Fed. Reg. 75, 340 (Dec. 11, 2008).

## STATEMENT OF FACTS

**I.     EPA Information Requests and VIWAPA Responses**

64.     On April 10, 2009, pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, EPA issued VIWAPA a request for information ("April 2009 Request") seeking information concerning the operations of the St. Thomas Facility from March 2004 through April 2009.  On June 9, 2009, VIWAPA provided EPA with its responses ("Responses to April 2009 Request").

65.     On March 17, 2010, pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, EPA

issued VIWAPA a Request for Information ("March 2010 Request") seeking information concerning the operations of the St. Thomas Facility from January 1, 2010 through December 31, 2012.  On May 14, 2010 and quarterly thereafter, VIWAPA submitted responses to EPA ("Responses to March 2010 Request").

66.    On May 20, 2010, pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, EPA issued VIWAPA a Request for Information ("May 2010 Request") seeking information concerning the St. Thomas Facility's emissions and opacity monitoring systems from April 1, 2010 through December 31, 2012.  On July 2, 2010 and quarterly thereafter, VIWAPA submitted responses to EPA ("Response to May 2010 Request").

67.    On  January 10, 2013, pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, EPA issued VIWAPA a Request for Information ("January 2013 Request") seeking information concerning the St. Thomas Facility's operations and information concerning the St. Thomas Facility's emissions and opacity monitoring systems from January 1, 2013 through December 31, 2013.  On May 22, 2013 and quarterly thereafter, VIWAPA submitted responses to EPA ("Responses to January 2013 Request").

68.    VIWAPA's Responses to the April 2009, March 2010 and January 2013 Requests concerning the operation of the St. Thomas Facility's water injection system indicate that the Facility monitors the following parameters on an hourly basis for each unit: (i) date and time; (ii) load in megawatts; (iii) load capacity; (iv) ratio of water-to-fuel; and (v) minimum water-to-fuel ratio required by the initial performance test.

69.    Using the information contained in VIWAPA's Responses, EPA calculated the water-to-fuel ratio for every hour for Units 15, 18, 22 and 23 by taking the amount of water being injected into the turbine for a given hour and dividing that value by the amount of fuel

being burned for the corresponding hour and reviewed continuous emission monitor system ("CEMS") data included in VIWAPA's Responses to the January 2013 Request.

## II.    EPA Request to Conduct Stack Testing

70.    On January 13, 2011, pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, EPA issued VIWAPA a Request for Information ("January 2011 Request") seeking information on the St. Thomas Facility's boilers and the HRSG damper system.  On March 5, 2011, VIWAPA provided EPA with its responses to the January 2011 Request ("Responses to January 2011 Request").

71.    On January 19, 2011, pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, EPA issued VIWAPA a request for information ("Stack Test 114 Request") requiring VIWAPA to submit protocols for: 1) conducting stack testing on Units 15, 18, 22, and the HRSG at the St. Thomas Facility, and 2) conducting Relative Accuracy Test Audits ("RATAs") on all CEMS associated with those units.  The request also required that stack tests and RATAs be conducted pursuant to EPA-approved protocols and that VIWAPA conduct 40 C.F.R. Part 60, Appendix A, Method 9 ("Method 9"), visible emission observation ("VE observation") at all specified units and at Units 12 and 14.

72.    On January 12, 2011, VIWAPA submitted, for EPA approval, a Stack Test Protocol ("Stack Test Protocol") for testing emissions of Opacity, $PM_{10}$ and VOCs from Units 15, 18, 22 and the HRSG at the St. Thomas Facility.

73.    On March 8, 2011, VIWAPA submitted, for EPA approval, a document entitled "Emission, Monitor Performance Specification and RATAs Test Protocol" ("RATA Protocol") for Units 15, 18, 22, 23 and the HRSG at the St. Thomas Facility.  This protocol included VE observation, in accordance with Method 9, for Units 15, 18, 22, 23, the HRSG and Units 12 and

14.

74.    On July 7, 2011, EPA conditionally approved VIWAPA's Stack Test Protocol and approved VIWAPA's RATA Protocol.

75.    On July 27, 2012, VIWAPA submitted, for EPA approval, revisions to the Stack Test Protocol.  The revisions to the Stack Test Protocol included the addition of Units 23 and 25 to the testing and expanded the Stack Test Protocol to include testing for sulfuric acid mist.

76.    On September 13, 2012, EPA approved the revisions to the Stack Test Protocol.

III.    **EPA Issued Notices of Violation and Compliance Order**

77.    On November 10, 2010, EPA issued VIWAPA a Notice of Violation ("NOV") finding that VIWAPA violated the federal PSD regulations (incorporated by reference into the VI State Implementation Plan), the St. Thomas Facility's Consolidated PSD Permit and the Unit 23 PSD Permit.

78.    On May 9, 2011, pursuant to Section 113(a)(3) of the CAA, 42 U.S.C. § 113(a), EPA issued a Compliance Order, for the St. Thomas Facility, requiring VIWAPA to: (i) complete a third-party system-wide evaluation of the water injection system of each PSD permitted turbine; (ii) implement a capital improvement program to replace all damaged and/or deteriorated equipment relating to the water injection systems for all PSD permitted turbines; (iii) correct any equipment, hardware, software, or operational deficiencies revealed during the audits; (iv) ensure that water flow monitors shall be located as close as possible to the turbine injection points to minimize false readings caused by leaks downstream, clogged filters, or unforeseen problems; (v) install, operate and maintain a feed water pretreatment system to remove minerals that lead to scaling and clogging of the water injection nozzles; (vi) develop and implement a preventative operation and maintenance plan (including standard operation

16

procedures) to ensure the proper and continual operation of the water injection system; (vii) implement a spare parts inventory program at the St. Thomas Facility; and (viii) ensure that at least one technical person or engineer be available on site at the St. Thomas Facility at all times who is trained and experienced in operating and maintaining the water injection system.

79.    On May 7, 2014, EPA issued VIWAPA a second NOV finding that VIWAPA violated the opacity limit set forth in the VI-APCAR&R and federal PSD regulations (incorporated by reference into the Virgin Islands State Implementation Plan), and the St. Thomas Facility's Consolidated PSD Permit.

**IV.    VE Observations and Stack Testing**

80.    On October 20, 25, and November 9, 2012, VIWAPA conducted VE observations, in accordance with Method 9, on Unit 14 at the St. Thomas Facility.

81.    On November 1, 2012 and December 2, 2012, VIWAPA conducted stack testing on Units 15, 18 and 23 at the St. Thomas Facility.  The pollutants tested during the stack testing included $PM_{10}$, VOCs, and sulfuric acid mist from Unit 23.

82.    On April 30, 2013, VIWAPA submitted a report detailing the results of the October / November VE observations and the November / December stack testing at the St. Thomas Facility.

83.    The April 30, 2013 report ("April 30, 2013 Stack Test Report") reported that during the October / November VE observations, plumes were observed discharging from Unit 14 with opacity equal to or greater than 20% for greater than three minutes of all 30 minute periods; and that during the November / December stack testing, there were $PM_{10}$ and VOC exceedances at Unit 18, and sulfuric acid mist exceedances at Unit 23.

**V.    EPA Inspections**

84.    On June 23, 2010 ("June 2010 EPA Inspection") and August 23 - 24, 2010

("August 2010 EPA Inspection"), EPA performed two inspections of the St. Thomas Facility. During the inspections, EPA inspectors conducted VE observations in accordance with Method 9.

85.    During the August 2010 EPA Inspection, EPA observed, in accordance with Method 9, a plume from Boiler 11, discharging into the atmosphere opacity greater than 20% for at least 18 minutes, not including three minutes of opacity equal to or less than 40% in 30 minutes.

86.    During the June 2010 EPA Inspection, EPA observed, in accordance with Method 9, a plume from Unit 12 discharging into the atmosphere opacity greater than 20% for at least 24 minutes, not including three minutes of opacity equal to or less than 40% in 30 minutes.

87.    During the August 2010 EPA Inspection, EPA observed, in accordance with Method 9, a plume from Unit 14 discharging into the atmosphere opacity greater than 20% for at least 24 minutes, not including three minutes of opacity equal to or less than 40% in 30 minutes.

**VI.    Election to Use Continuous Emissions Monitors**

88.    Pursuant to NSPS Subpart GG, VIWAPA notified EPA in its October 2004 PSD Quarterly Report, that it was electing to use CEMS to comply with the monitor requirements for $NO_X$ emissions, set forth in 40 C.F.R. § 60.334(b).

**VII.    Submission of Quarterly PSD, NSPS and Title V Reports**

89.    From October 1, 2005 to September 30, 2007, VIWAPA submitted to EPA, PSD Quarterly Reports, which include, among other things, hours of excess $NO_X$ emissions and CEMS and continuous opacity monitors ("COMS") quality data availability for the St. Thomas Facility to meet the requirement of the 1994 PSD Permit and the 2001 PSD Permit.

90.    From October 1, 2007 to present, VIWAPA submits, to EPA, PSD Quarterly

Reports, which include, among other things, hours of excess $NO_X$ emissions and CEMS and COMS quality data availability for the St. Thomas Facility to meet the requirements of the St. Thomas Consolidated PSD Permit and the Unit 23 PSD Permit.

91.    From October 1, 2005 to present, VIWAPA submits, to EPA, NSPS Reports, which include, among other things, hours of excess $NO_X$ emissions, to meet the requirements of 40 C.F.R. § 60.334(j).  VIWAPA submits the NSPS Reports to EPA concurrently with the PSD Quarterly Reports.

92.    From October 1, 2005 to present, VIWAPA submits, to EPA, within 30 days of the end of each calendar quarter, Title V Operating Permit reports ("Title V Reports"), which include, among other things, all hours of excess $NO_X$ emissions, to meet the requirements of the St. Thomas Title V Operating Permit.

## GENERAL ALLEGATIONS

### I.    St. Thomas Facility

93.    At all relevant times, VIWAPA was and is the "owner" and "operator" of the St. Thomas Facility, within the meaning of 40 C.F.R. Part 60, Subparts A, GG and KKKK.

94.    At all relevant times, Units 15, 18, 22, and 23 at the St. Thomas Facility were and are "stationary gas turbine[s]" within the meaning of 40 C.F.R. Part 60, Subpart GG.

95.    From March 15, 2012, through present, Units 25 was and is a "stationary gas turbine" within the meaning of 40 C.F.R. Part 60, Subpart KKKK.

96.    At all relevant times, the St. Thomas Facility was and is subject to 40 C.F.R. Part 60, Subparts A, GG and KKKK.

97.    At all relevant times, the St. Thomas Facility was and is a "major emitting facility" within the meaning of Section 169 of the CAA, 42 U.S.C. § 7479.

98.     At all relevant times, the St. Thomas Facility was and is a "major source" within the meaning of Section 501(2) of the Act, 42 U.S.C. § 7661(2), 40 C.F.R. Part 70.2 and VI-APCAR&R Title 12, Chapter 9, Section 204-20(hh).

99.     From August 24, 1994 to February 19, 2007, Units 15, 18 and the HRSG at the St. Thomas Facility were subject to the 1994 PSD Permit.

100.    From January 3, 2001 to February 19, 2007, Unit 22 at the St. Thomas Facility was subject to the 2001 PSD Permit.

101.    Since February 20, 2007, Units 15, 18, and 22 and the HRSG at the St. Thomas Facility were and continue to be subject to the St. Thomas Consolidated PSD Permit issued by EPA on February 20, 2007, and modified on June 18, 2007.

102.    Since December 31, 2003, Units 15, 18, 22 and the HRSG were and continue to be subject to the St. Thomas Title V Operating Permit.

103.    At all relevant times to this Complaint, the St. Thomas Title V Operating Permit, and either the 1994 PSD Permit, the 2001 PSD Permit or the St. Thomas Consolidated PSD Permit allowed the St. Thomas Facility to operate the following three oil-fired gas turbines: Units 15, 18, and 22, and allowed the St. Thomas Facility to operate the HRSG, which recovers the exhausts from Units 15 and 18.

104.    Since September 8, 2004, Unit 23 at the St. Thomas Facility was and is subject to the Unit 23 PSD Permit.

105.    At all relevant times to this Complaint, the Unit 23 PSD Permit allowed the St. Thomas Facility to operate Unit 23, an oil-fired gas turbine.

106.    At all relevant times to this Complaint, the Unit 25 Operating Permit allowed the St. Thomas Facility to operate Unit 25, an oil-fired gas turbine.

## II.    St. John Facility

107.    At all relevant times, VIWAPA was and is the "owner" and "operator" of the St. John Facility, within the meaning of 40 C.F.R. Part 60, Subparts A and GG and 40 C.F.R. Part 63 Subpart ZZZZ.

108.    At all relevant times, the St. John 2.5 MW diesel engine ("St. John Unit") was and is a stationary reciprocal internal combustion engine within the meaning of 40 C.F.R. Part 63.6585(a).

109.     At all relevant times, the St. John Unit has been a "major source of HAP emissions" within the meaning of 40 C.F.R. Part 63.6585(b).

110.    On April 28, 2005, VIDPNR issued VIWAPA a Title V Operating Permit for the St. John Facility ("St. John Title V Permit").

111.    The expiration date set in the St. John Title V Permit was April 28, 2010.

112.    Pursuant to Section 206-61(d) of subchapter 206 of Chapter 9 of the VI-APCAR&R, applications for permit renewal shall be submitted at least 6 months prior to the date of expiration of the permit.

113.    VIWAPA submitted a renewal application for the St. John Title V Operating Permit to Department of Planning and Natural Resources ("DPNR") on May 25, 2010.

114.    Between April 28, 2005 and April 28, 2010, the St. John Facility was subject to the St. John Title V Operating Permit.

115.    Since April 29, 2010, the St. John Facility has operated without a Title V Operating Permit.

## FIRST CLAIM FOR RELIEF: FAILURE TO OPERATE AND/OR PROPERLY OPERATE THE WATER INJECTION SYSTEM AT UNITS 15, 18, 22 and 23

**Applicable Violations: 1) NSPS Subpart GG, 2) St. Thomas PSD Permits, and 3) St. Thomas Title V Operating Permit**

116.    Paragraphs 1 - 115 are realleged and incorporated herein by reference.

117.    NSPS Subpart GG establishes limits on the amount of $NO_X$ that can be discharged from a stationary gas turbine. On and after completing the performance test required by 40 C.F.R. § 60.8(a), owners and operators of a stationary gas turbine are prohibited from causing to be discharged into the atmosphere from any stationary gas turbine, any gases that contain $NO_X$ in excess of amounts calculated as required in 40 C.F.R. § 60.332(a).

118.    In order to comply with NSPS Subpart GG, the St. Thomas Facility chose to use water injection systems to control $NO_X$ emissions from Units 15, 18, 22, and 23.

119.    The St. Thomas Facility's Title V Operating Permit, the 1994 PSD Permit, the 2001 PSD Permit and the St. Thomas Consolidated PSD Permit, respectfully, require VIWAPA to use water injection systems to control $NO_X$ emissions from Units 15, 18, and 22. The St. Thomas Facility's Title V Operating Permit, the 1994 PSD Permit, the 2001 PSD Permit and the Consolidated PSD Permit, respectfully, require that except when operating at low loads, as reserve, the Facility shall use water injection at all times to control $NO_X$ emissions from Units 15, 18 and 22.

120.    The St. Thomas Facility's Title V Operating Permit, the 1994 PSD Permit, the 2001 PSD Permit, and the Consolidated PSD Permit, respectfully, require that the water-fuel-ratio for various load conditions for operating Units 15, 18 and 22 will be established during initial performance testing for $NO_X$.

121.    The Unit 23 PSD Permit requires VIWAPA to use a water injection system to

control $NO_X$ emissions from Unit 23.

122.    The Unit 23 PSD Permit requires that except when operating at low loads, as reserve, the St. Thomas Facility shall use water injection at all times to control $NO_X$ emissions.

123.    At relevant times, the Unit 23 PSD Permit requires that the water-fuel-ratio for various load conditions for operating Unit 23 will be established during initial performance testing for $NO_X$.

124.    NSPS Subpart GG at 40 C.F.R § 60.334(j)(1)(A) provides that for gas turbines using water-fuel-ratio monitoring, an excess emission shall be any unit operating hour for which the average water-fuel-ratio, as measured by the continuous monitoring system, falls below the acceptable water-fuel-ratio needed to demonstrate compliance with § 60.332, as established during the performance test required in § 60.8. This includes any unit operating hour in which no water or steam is injected into the turbine while in operation.

125.    VIWAPA's Responses to EPA's April 2009, March 2010, and January 2013 Requests (collectively, "VIWAPA's Responses") indicate that the St. Thomas Facility failed to operate the water injection systems when units were operating above low load for at least the following hours:  (a) Unit 15:  25,779 hours, (b) Unit 18:  26,118 hours, (c) Unit 22:  15,006 hours, and (d) Unit 23:  17,615 hours.

126.    VIWAPA's Responses indicate that from October 1, 2005 until December 31, 2013, VIWAPA failed to properly operate the water injection systems for Units 15, 18, 22, and 23 for at least the following number of hours: (a) Unit 15: 5,438 hours; (b) Unit 18: 5,218 hours; (c) Unit 22: 379 hours; (d) Unit 23: 4,782 hours, because the water was being injected at a rate below the required water to fuel ratio.

127.    Each of VIWAPA's failures to operate the water injection systems when

operating above low load and to properly operate the water injection systems at Units 15, 18 and 22, depending on the date, is a violation of the 1994 PSD Permit, the 2001 PSD Permit or the St. Thomas Consolidated PSD Permit.

128.    Each of VIWAPA's failures to operate the water injection systems when operating above low load and to properly operate the water injection systems at Units 15, 18 and 22 is a violation of the St. Thomas Title V Operating Permit, the VI Title V Operating Permit Program, and Title V of the CAA.

129.    Each of VIWAPA's failures to operate the water injection systems when operating above low load and operate the water injection system at Unit 23 is a violation of the Unit 23 PSD Permit.

130.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

## SECOND CLAIM FOR RELIEF: FAILURE TO OPERATE IN COMPLIANCE WITH NOₓ EMISSION LIMITS

**Applicable Violations: 1) NSPS Subpart GG, 2) St. Thomas PSD Permits, and 3) St. Thomas Title V Operating Permit**

131.    Paragraphs 1 - 130 are realleged and incorporated herein by reference.

132.    At all relevant times, VIWAPA was and is required to comply with the NSPS Subpart GG $NO_X$ emission limits.

133.    At all relevant times, VIWAPA was and is required to comply with the St. Thomas Title V Operating Permit condition that includes the NSPS Subpart GG $NO_X$ emission limits as an applicable requirement.

134.    At all relevant times, VIWAPA was and is required to comply with the $NO_X$ emission limits, depending upon the date and Unit, contained in the 1994 PSD Permit, the 2001 PSD Permit, the St Thomas Consolidated PSD Permit, and the Unit 23 PSD Permit.

135.    NSPS Subpart GG at 40 C.F.R. § 60.332(a)(1), 40 C.F.R. § 60.332(a) prohibits the stationary gas turbines at the St. Thomas Facility from discharging $NO_X$ in excess of the following amounts: (1) 79.1 parts per million dry volume ("ppmdv") corrected to 15% oxygen for Unit 15; (2) 79.0 ppmdv corrected to 15% oxygen for Units 18 and 22; and (3) 89.6 ppmdv corrected to 15% oxygen for Unit 23.

136.    In order to meet the $NO_X$ emission limits set under NSPS Subpart GG and contained in the applicable PSD permits and the St. Thomas Title V Operating Permit, water must be injected through the water injection system.  The amount of water that needs to be injected through the water injection system is dependent on the amount of fuel being injected into the turbine at any given time.

137.    Using VIWAPA's Responses to April 2009, March 2010, May 2010 and January 2013 Requests and VIWAPA's PSD Quarterly Reports, EPA determined that from October 1, 2005 through at least December 31, 2013, VIWAPA failed to indicate that it injected *any* water while operating above low load.  VIWAPA's failure to operate the water injection systems resulted in exceedances of the NSPS Subpart GG $NO_X$ emission limits for at least the following hours:  (a) Unit 15:  25,779 hours, (b) Unit 18:  26,118 hours, (c) Unit 22:  15,006 hours, and (d) Unit 23:  17,615 hours.

138.    VIWAPA's Reponses to EPA's January 2013 Requests include CEMS data that indicate exceedances of the $NO_X$ emission limits.

139.    VIWAPA's Responses indicate that, from October 1, 2005 until December 31, 2013, VIWAPA did not inject water at or above the proper water-to-fuel ratio in the water injection system.

140.    Using the information in VIWAPA's Responses, and the PSD Quarterly Reports

submitted pursuant to the 1994 PSD Permit, the 2001 PSD Permit, St. Thomas Consolidated

PSD Permit, and the Unit 23 PSD Permits, EPA determined that, from October 1, 2005 until

December 31, 2013, VIWAPA failed to inject water at or above the proper water-to-fuel ratio.

VIWAPA's failure resulted in exceedances of the $NO_X$ emission limits for Units 15, 18, 22, and

23 for at least the following number of hours: (a) Unit 15: 31,217 hours; (b) Unit 18: 31,336

hours; (c) Unit 22: 15,385 hours; (d) Unit 23: 22,397 hours.

141.    Each of VIWAPA's failures to operate Units 15, 18, 22 and 23 in compliance

with the $NO_X$ emission limits is a violation of 40 C.F.R. § 60.332(a)(1) of NSPS Subpart GG.

142.    Each of VIWAPA's failures to operate Units 15, 18, and 22 in compliance with

the Title V Operating Permit condition that includes the $NO_X$ emission limits is a violation of the

Title V Operating Permit, Title V of the Act, and the VI Title V Operating Permit Program.

143.    Each of VIWAPA's failures to operate Units 15, 18, and 22, in compliance with

the $NO_X$ emission limits contained in the 1994 PSD Permit, the 2001 PSD Permit, or the St.

Thomas Consolidated PSD Permit is a violation, depending upon the date and the Unit, of those

PSD Permits.

144.    Each of VIWAPA's failures to operate Unit 23 in compliance with the $NO_X$

emission limit contained in Unit 23 PSD Permit is a violation of the Unit 23 PSD Permit.

145.    For each violation referenced in this claim, VIWAPA is subject to injunctive

relief and penalties as set forth in Paragraph 63.

**THIRD CLAIM FOR RELIEF: FAILURE TO OPERATE UNIT 23 IN COMPLIANCE
WITH SULFURIC ACID MIST EMISSION LIMIT**
Applicable Violation: Unit 23 PSD Permit

146.    Paragraphs 1 - 145 are realleged and incorporated herein by reference.

147.    At all relevant times, VIWAPA was and is required to comply with the 7.5

pounds per hour Sulfuric Acid Mist Emission Limit contained in the Unit 23 PSD Permit.

148.    VIWAPA's April 30, 2013 Stack Test Report reported that during the November 1, 2012 stack test, the average Sulfuric Acid Mist emission rate for Unit 23 was 10.6 pounds per hour.

149.    The average Sulfuric Acid Mist emission rate of 10.6 pounds per hour at Unit 23 during the November 1, 2012 stack testing violated the 7.5 pounds per hour Sulfuric Acid Mist Emission Limit contained in the Unit 23 PSD Permit.

150.    This violation is deemed a continuing violation until VIWAPA conducts a subsequent stack test that demonstrates that it is in compliance with the 7.5 pounds per hour Sulfuric Acid Mist Emission Limit contained in the Unit 23 PSD Permit.

151.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth is Paragraph 63.

### FOURTH CLAIM FOR RELIEF: FAILURE TO OPERATE UNIT 18 IN COMPLIANCE WITH PARTICULATE MATTER EMISSION LIMIT
**Applicable Violations: 1) St. Thomas Consolidated PSD Permit and 2) St. Thomas Title V Operating Permit**

152.    Paragraphs 1 - 151 are realleged and incorporated herein by reference.

153.    At all relevant times, VIWAPA was and is required to comply with the $PM_{10}$ Emission Limit of 5.0 pounds per hour for Unit 18 contained in the St. Thomas Consolidated PSD Permit and in the St. Thomas Title V Operating Permit.

154.    VIWAPA's April 30, 2013 Stack Test Report reported that during the December 2, 2012 stack test, the average $PM_{10}$ emission rate for Unit 18 was 7.0 pounds per hour.

155.    The average $PM_{10}$ emission rate of 7.0 pounds per hour at Unit 18 during the December 2, 2012 stack testing violated the 5.0 pounds per hour $PM_{10}$ Emission Limit contained in the St. Thomas Consolidated PSD Permit and the St. Thomas Title V Operating Permit.

156.    VIWAPA's exceedance of the $PM_{10}$ Emission Limit at Unit 18 during the December 2, 2012 stack testing also violated Title V of the CAA and the VI Title V Operating

27

Permit Program.

157.    This violation is deemed a continuing violation until VIWAPA conducts a

subsequent stack test that demonstrates that it is in compliance with the 5.0 pounds per hour

$PM_{10}$ Emission Limit contained in the St. Thomas Consolidated PSD Permit and the St. Thomas

Title V Operating Permit.

158.    For each violation referenced in this claim, VIWAPA is subject to injunctive

relief and penalties as set forth is Paragraph 63.

## FIFTH CLAIM FOR RELIEF: FAILURE TO OPERATE UNIT 18 IN COMPLIANCE WITH VOC EMISSION LIMIT
**Applicable Violations: 1) St. Thomas Consolidated PSD Permit and 2) St. Thomas Title V Operating Permit**

159.    Paragraphs 1 - 158 are realleged and incorporated herein by reference.

160.    At all relevant times, VIWAPA was and is required to comply with the VOC

Emission Limit of 4.3 pounds per hour for Unit 18 contained in the St. Thomas Consolidated

PSD Permit and in the St. Thomas Title V Operating Permit.

161.    VIWAPA's April 30, 2013 Stack Test Report reported that during December 2,

2012 stack tests, the average VOC emission rate for Unit 18 was 5.4 pounds per hour.

162.    The average VOC emission rate of 5.4 pounds per hour at Unit 18 during the

December 2, 2012 stack testing violated the 4.3 pounds per hour VOC Emission Limit contained

in the St. Thomas Consolidated PSD Permit and the St. Thomas Title V Operating Permit.

163.    VIWAPA's exceedances of the VOC Emission Limit at Unit 18 during the

December 2, 2012 stack testing also violated Title V of the CAA and the VI Title V Operating

Permit Program.

164.    This violation is deemed a continuing violation until VIWAPA conducts a

subsequent stack test that demonstrates that it is in compliance with the 4.3 pounds per hour

VOC Emission Limit contained in the St. Thomas Consolidated PSD Permit and the St. Thomas

Title V Operating Permit.

165.    For each violation referenced in this claim, Defendant is subject to injunctive

relief and penalties as set forth is Paragraph 63.

## SIXTH CLAIM FOR RELIEF: FAILURE TO OPERATE BOILER 11, AND UNITS 12 AND 14 IN COMPLIANCE WITH OPACITY LIMIT
**Applicable Violations: 1) VI Opacity Rule, 2) VI State Implementation Plan, 3) St. Thomas Title V Operating Permit, 4) VI Title V Operating Permit Program, and 5) Title V of the CAA**

166.    Paragraphs 1 - 165 are realleged and incorporated herein by reference.

167.    Pursuant to the Virgin Islands State Implementation Plan, VI-APCAR&R, Title

12, Chapter 9, Section 204-22(a) and (b) ("VI Opacity Rule") no source shall discharge into the

atmosphere, any air contaminant(s) with opacity equal to or greater than twenty percent (20%)

for any time period; however a source's fuel burning equipment may discharge into the

atmosphere any air contaminant(s) with opacity equal to or less than forty percent (40%) for a

period or periods aggregating not more than three (3) minutes in any thirty (30) minutes.

168.    At all relevant times, VIWAPA was and is required to comply with the VI

Opacity Rule EPA approved into the Virgin Islands State Implementation Plan on April 18, 1994

(see, *59 Fed. Reg. 18309 (April 18, 1994)*), and the Condition in the Title V Operating Permit

that includes the VI Opacity Rule as an applicable requirement.

169.    In August 2010, EPA inspectors observed, in accordance with Method 9, a plume

discharging into the atmosphere from Boiler 11, with opacity greater than 20% for at least 18

minutes, not including three minutes of opacity equal to or less than 40% in 30 minutes.

170.    In June 2010, EPA inspectors observed, in accordance with Method 9, a plume

discharging into the atmosphere from Unit 12 with opacity greater than 20% for at least 24

minutes, not including three minutes of opacity equal to or less than 40% in 30 minutes.

171.    In August 2010, EPA inspectors observed, in accordance with Method 9, a plume

discharging into the atmosphere from Unit 14 with opacity greater than 20% for at least 24 minutes, not including three minutes of opacity equal to or less than 40% in 30 minutes.

172. VIWAPA's April 30, 2013 Stack Test Report reported that during the October 20, 2012, October 25, 2012 and November 9, 2012, stack tests, VIWAPA observed, in accordance with Method 9, plumes discharging into the atmosphere from Unit 14 with opacity equal to or greater than 20% for greater than 3 (three) minutes of all 30 (thirty) minute periods in which testing was being conducted.

173. Each of VIWAPA's failures to operate Boiler 11 and Units 12 and 14 in compliance with the VI Opacity Rule is a violation of the VI Opacity Rule, the Virgin Islands State Implementation Plan, the St. Thomas Title V Operating Permit, the VI Title V Operating Permit Program, and Title V of the CAA.

174. For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

### SEVENTH CLAIM FOR RELIEF: FAILURE TO CONDUCT ANNUAL RELATIVE ACCURACY AUDIT TESTS ("RATAs")
**Applicable Violations: 1) NSPS General Provisions, 2) NSPS Subpart GG, 3) St. Thomas Consolidated PSD Permit 4) Title V Operating Permit, 5) the VI Title V Operating Permit Program, 6) Title V of the CAA, and 7) Unit 23 PSD Permit**

175. Paragraphs 1 - 174 are realleged and incorporated herein by reference.

176. 40 C.F.R. Part 60 App. F 5.1.1. requires RATAs of CEMS to be conducted at least once every four calendar quarters.

177. At all relevant times, VIWAPA was and is required to conduct annual RATAs, at Units 15, 18, 22 and the HRSG, pursuant to the NSPS General Provisions, NSPS Subpart GG, the St. Thomas Consolidated PSD Permit, and the St. Thomas Title V Operating Permit.

178. At all relevant times, VIWAPA was and is required to conduct annual RATAs, at Unit 23, pursuant to the NSPS General Provisions, NSPS Subpart GG, and the Unit 23 PSD

Permit.

179.    VIWAPA's Responses to the April 2009, May 2010, and January 2012 Requests and its April 30, 2013 Stack Test Report do not indicate that VIWAPA conducted annual RATAs at the St. Thomas Facility from at least October 1, 2010 through October 18, 2012 (the date upon which the first RATA was conducted), on the $NO_X$ and CO CEMS at the stacks associated with Units 15, 18, 22 and 23, which includes the monitors of the stack associated with the HRSG.

180.    Each of VIWAPA's failures to conduct RATAs at Unit 15, 18, 22, and the HRSG is a violation of the NSPS General Provisions, NSPS Subpart GG, the St. Thomas Consolidated PSD Permit, the St. Thomas Title V Operating Permit, the VI Tile V Operating Permit Program, and Title V of the CAA.

181.    Each of VIWAPA's failures to conduct RATAs at Unit 23 is a violation of the NSPS General Provisions, NSPS Subpart GG, and the Unit 23 PSD Permit.

182.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

## EIGHTH CLAIM FOR RELIEF: FAILURE TO CONDUCT CYLINDER GAS AUDITS ("CGAs")
**Applicable Violations: 1) NSPS General Provisions, 2) NSPS Subpart GG, 3) St. Thomas Consolidated PSD Permit 4) St. Thomas Title V Operating Permit, 5) VI Title V Operating Permit Program, 6) Title V of the CAA, and 7) Unit 23 PSD Permit**

183.    Paragraphs 1- 182 are realleged and incorporated herein by reference.

184.    40 C.F.R. Part 60 App. 5.1.2. requires cylinder gas audits ("CGAs") to be conducted in three of four calendar quarters, but in no more than three quarters in succession.

185.    At all relevant times, VIWAPA was and is required to conduct CGAs, at Units 15, 18, 22 and the HRSG, pursuant to the NSPS General Provisions, NSPS Subpart GG, the St. Thomas Consolidated PSD Permit, and the St. Thomas Title V Operating Permit.

186.    At all relevant times, VIWAPA, was and is required to perform CGAs at Unit 23,

pursuant to the NSPS General Provisions, NSPS Subpart GG, and the Unit 23 PSD Permit.

187.    VIWAPA's Responses to the April 2009, May 2010 and January 2012 Requests, and the April 30, 2013 Stack Test Report failed to indicate that VIWAPA conducted quarterly CGAs at the St. Thomas Facility, from at least October 1, 2010 through July 22, 2013 (the date upon which the first CGA was conducted), on the $NO_X$ and CO CEMS at the stacks associated with Units 15, 18, 22, and 23, which includes the monitors of the stacks associate with the HRSG.

188.    Each of VIWAPA's failures to conduct CGAs at Units 15, 18, 22 and the HRSG is a violation of the NSPS General Provisions, NSPS Subpart GG, the St. Thomas Consolidated PSD Permit, the St. Thomas Title V Operating Permit, the VI Tile V Operating Permit Program, and Title V of the CAA.

189.    Each of VIWAPA's failures to conduct CGAs at Unit 23 is a violation of the NSPS General Provisions, NSPS Subpart GG and the Unit 23 PSD Permit.

190.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

**NINTH CLAIM FOR RELIEF: FAILURE TO OPERATE NO$_X$ CEMS**
**Applicable Violations: 1) NSPS Subpart GG, 2) St. Thomas Consolidated PSD Permit,**
**3) St. Thomas Title V Operating Permit, 4) the VI Title V Operating Permit Program, 5) Title V of the CAA,**
**and 6) the Unit 23 PSD Permit**

191.    Paragraphs 1 - 190 are realleged and incorporated herein by reference.

192.    40 C.F.R. § 60.13(a) requires that all continuous monitoring systems required under applicable NSPS subparts are subject to the provisions of 40 C.F.R. § 60.13 upon promulgation of performance specifications for continuous monitoring systems as specified.

193.    40 C.F.R. § 60.334(a) requires the owner or operator of any stationary gas turbine, subject to NSPS Subpart GG, that is using water injection to control $NO_X$ emissions to install,

maintain, calibrate, and operate a continuous monitoring system.

194.    Pursuant to 40 C.F.R. § 60.334(b), the owner or operator of any stationary gas turbine that commenced construction, reconstruction or modification after October 3, 1977 but before July 8, 2004 and which uses water or steam injection to control $NO_X$ emissions, may comply with either the alternative provided or if it chooses, by using CEMS. If the option to use CEMS is chosen, the CEMS shall be installed, certified, maintained and operated as detailed in 40 C.F.R. § 60.334(b).

195.    At all relevant times, VIWAPA was and is required to use CEMS to monitor $NO_X$ emissions from Units 15, 18, 22, 23 and the HRSG, because VIWAPA elected to use CEMS to comply with the monitoring requirement under 40 C.F.R. § 60.334(a) and (b) of NSPS Subpart GG.

196.    At relevant times, VIWAPA was and is required to use CEMS to monitor $NO_X$ emissions from Units 15, 18, and 22 and the HRSG, as required by the St. Thomas Facility's Title V Operating Permit, and by the 1994 PSD Permit, the 2001 PSD Permit or the St. Thomas Consolidated PSD Permit.

197.    At relevant times, VIWAPA was and is required to use CEMS to monitor $NO_X$ emissions from Unit 23, as required by the Unit 23 PSD Permit.

198.    VIWAPA's Responses to EPA's May 2010 and January 2013 Request and its PSD Quarterly Reports submitted pursuant to the St. Thomas Consolidated PSD Permit and the Unit 23 PSD Permit, indicated that, from at least October 1, 2010 through December 31, 2013, VIWAPA failed to operate the $NO_X$ CEMS for at least the following hours: (a) Unit 15: 5,721 hours; (b) Unit 18: 2,762 hours; (c) Unit 22: 6,813; (d) Unit 23: 19,844; (e) the HRSG: 2,856 hours.

199.    Each of VIWAPA's failures to operate NO$_X$ CEMS associated with Units 15, 18, 22, and the HRSG is a violation of NSPS Subpart GG, the St. Thomas Consolidated PSD Permit, the St. Thomas Title V Operating Permit, the VI Title V Operating Permit Program, and Title V of the CAA.

200.    Each of VIWAPA's failures to operate the Unit 23 NO$_X$ CEMS is a violation of NSPS Subpart GG and the Unit 23 PSD Permit.

201.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

## TENTH CLAIM FOR RELIEF: FAILURE TO OPERATE CO CEMS
**Applicable Violations: 1) NSPS Subpart GG, 2) St. Thomas Consolidated PSD Permit, 3) St. Thomas Title V Operating Permit, 4) the VI Tile V Operating Permit Program, 5) Title V of the CAA, and 6) the Unit 23 PSD Permit**

202.    Paragraphs 1 – 201 are realleged and incorporated herein by reference.

203.    40 C.F.R. § 60.13(a) requires that all continuous monitoring systems required under applicable NSPS subparts are subject to the provisions of 40 C.F.R. § 60.13 upon promulgation of performance specifications for continuous monitoring systems as specified.

204.    At all relevant times, VIWAPA was and is required to use CEMS to monitor CO emissions from Units 15, 18, 22, 23 and the HRSG, because VIWAPA elected CEMS to comply with the monitoring requirement under 40 C.F.R. § 60.334(a) and (b) of NSPS Subpart GG.

205.    At all relevant times, VIWAPA was and is required to use CEMS to monitor CO emissions from Units 15, 18, and 22 and the HRSG, as required by the St. Thomas Facility's Title V Operating Permit, and depending on the date, by the 1994 PSD Permit, the 2001 PSD Permit, or the St. Thomas Consolidated PSD Permit.

206.    At relevant times, VIWAPA was and is required to use CEMS to monitor CO emissions from Unit 23, as required by the Unit 23 PSD Permit.

207.     VIWAPA's Responses to EPA's May 2010 and January 2013 Requests and its PSD Quarterly Reports submitted pursuant to the St. Thomas Consolidated PSD Permit and the Unit 23 PSD Permit, indicated that, from at least October 1, 2005 through December 31, 2013, VIWAPA did not operate the CO CEMS for approximately the following hours: (a) Unit 15: 5,432 hours; (b) Unit 18: 596 hours; (c) Unit 22: 6,883 hours; (d) Unit 23: 19,844 hours; (e) the HRSG: 1,222 hours

208.     Each of VIWAPA's failures to operate the CO CEMS associated with Units 15, 18, 22, and the HRSG, is a violation of NSPS Subpart GG, the St. Thomas Consolidated PSD Permit, the St. Thomas Title V Operating Permit, the VI Title V Operating Permit Program, and Title V of the CAA.

209.     Each of VIWAPA's failures to operate the Unit 23 CO CEMS is a violation of NSPS Subpart GG and the Unit 23 PSD Permit.

210.     For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

### ELEVENTH CLAIM FOR RELIEF: FAILURE TO OPERATE CONTINUOUS OPACITY MONITORS ("COMS")
**Applicable Violations: 1) NSPS Subpart GG, 2) St. Thomas Consolidated PSD Permit, 3) St. Thomas Title V Operating Permit, 4) the VI Title V Operating Permit Program, 5) Title V of the CAA, and 6) Unit 23 PSD Permit**

211.     Paragraphs 1 - 210 are realleged and incorporated herein by reference.

212.     40 C.F.R. § 60.13(a) requires that all continuous monitoring systems required under applicable NSPS subparts are subject to the provisions of 40 C.F.R. § 60.13 upon promulgation of performance specifications for continuous monitoring systems as specified.

213.     At all relevant times, VIWAPA was and is required to use COMS to monitor opacity from the stacks associated with Units 15, 18, 22, 23 and the HRSG because VIWAPA elected to use COMS to comply with the monitoring requirement under 40 C.F.R. § 60.334(a)

and (b) of NSPS Subpart GG.

214.    At relevant times, VIWAPA was and is required to use COMS to monitor opacity at Units 15, 18, 22 and the HRSG by the St. Thomas Facility's Title V Operating Permit, and depending on the date, the St. Thomas Consolidated PSD Permit, the 1994 PSD Permit, the 2001 PSD Permit or the St. Thomas Consolidated PSD Permit.

215.    At relevant times, VIWAPA was and is required to use COMS to monitor opacity at Unit 23 by the Unit 23 PSD Permit.

216.    VIWAPA's Responses to EPA's May 2010 and January 2013 Requests and its PSD Quarterly Reports submitted pursuant to the St. Thomas Consolidated PSD Permit and the Unit 23 PSD Permit, indicates that from at least October 1, 2010 through December 31, 2013 VIWAPA failed to operate COMS for the following hours: (a) Unit 15: 4,617 hours; (b) Unit 18: 2,124 hours; (c) Unit 22: 6,883 hours; (d) Unit 23: 19,558 hours; (e) the HRSG: 651 hours.

217.    Each of VIWAPA's failures to operate the COMS, at Units 15, 18, 22, and the HRSG, is a violation of NSPS Subpart GG, the St. Thomas Consolidated PSD Permit, the St. Thomas Title V Operating Permit, the VI Title V Operating Permit Program, and Title V of the CAA.

218.    Each of VIWAPA's failures to operate the Unit 23 COMS is a violation of NSPS Subpart GG and the Unit 23 PSD Permit.

219.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

## TWELFTH CLAIM FOR RELIEF: FAILURE TO MAINTAIN QUALITY DATA AVAILABILITY EACH QUARTER

**Applicable Violations: 1) St. Thomas Consolidated PSD Permit, 2) St. Thomas Title V Operating Permit, 3) the VI Title V Operating Permit Program,  4) Title V of the CAA, and 5) Unit 23 PSD Permit**

220.    Paragraphs 1 - 219 are realleged and incorporated herein by reference.

221.    At relevant times, the St. Thomas Consolidated Permit and the St. Thomas Title V Operating Permit Program require VIWAPA to meet 95% quality data availability each quarter for COMS and 90% quality data availability each quarter for the NOx and CO CEMS associated with Units 15, 18 and the HRSG.

222.    At all relevant times, the St. Thomas Consolidated Permit and the St. Thomas Title V Operating Permit require VIWAPA to meet 95% quality data availability each quarter for COMS and 95% quality data availability each quarter for the $NO_X$ and CO CEMS associated with Unit 22.

223.    At all relevant times, the Unit 23 PSD Permit requires VIWAPA to meet 95% quality data availability each quarter for COMS and 95% quality data availability each quarter for the $NO_X$ and CO CEMS associated with Unit 23.

224.    In the PSD Quarterly Reports, submitted pursuant to the St. Thomas Consolidated PSD Permit and the Unit 23 PSD Permit, VIWAPA indicates that, from at least October 1, 2010 through at least December 31, 2013, it failed to maintain 95% quality data availability each quarter for the COMS associated with Units 15, 18, 22, 23 and the HRSG.

225.    In the PSD Quarterly Reports, submitted pursuant to the St. Thomas Consolidated PSD Permit, VIWAPA indicates that, from at least October 1, 2010 through at least December 31, 2013, it failed to maintain 90% quality data availability each quarter for the $NO_X$ and CO CEMS associated with Units 15, 18 and the HRSG.

226.    In the PSD Quarterly Reports, submitted pursuant to the St. Thomas Consolidated PSD Permit and the Unit 23 PSD Permit, VIWAPA indicates that from at least October 1, 2010 through at least December 31, 2013, it failed to maintain 95% quality data availability each quarter for the $NO_X$ and CO CEMS associated with Units 22 and 23.

227.    Each of VIWAPA's failures to meet the CEMS and COMS quality data availability requirements each quarter, for the COMS, $NO_X$ CEMS and CO CEMS associated with Units 15, 18, 22 and the HRSG, is a violation of the St. Thomas Consolidated PSD Permit.

228.    Each of VIWAPA's failures to meet the CEMS and COMS quality data availability requirements each quarter, for the COMS, $NO_X$ CEMS and CO CEMS associated with Unit 23 is a violation of the Unit 23 PSD Permit.

229.    Each of VIWAPA's failure to meet the CEMS and COMS quality data availability requirements each quarter, for the COMS, $NO_X$ CEMS and CO CEMS associated with Units 15, 18, 22 and the HRSG, is a violation of the St. Thomas Title V Operating Permit, the VI Title V Operating Permit Program, and Title V of the CAA.

230.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

### THIRTEENTH CLAIM FOR RELIEF: FAILURE TO CONDUCT STACK TESTING EVERY THIRTY MONTHS AT ST.THOMAS UNITS
**Applicable Violations: 1) St. Thomas Title V Operating Permit, 2) the VI Title V Operating Permit Program, and 3) Title V of the Act**

231.    Paragraphs 1 - 230 are realleged and incorporated herein by reference.

232.    At relevant times, VIWAPA was and is required to conduct stack tests every thirty months at the stacks associated with Units 15, 18, 22 and the HRSG by the St. Thomas Title V Operating Permit.

233.    VIWAPA's Responses indicate that VIWAPA failed to conduct stack tests for $NO_X$, CO, $PM_{10}$, VOC, and $SO_2$ on the stacks associated with Units 15, 18, 22 and the HRSG in July 2006, January 2009, and July 2011, or at any other time between October 1, 2005 and October 18, 2012.

234.    Each of VIWAPA's failures to conduct the required stack testing on the stacks

associated with Units 15, 18, 22, and the HRSG is a violation of the St. Thomas Title V Operating Permit, the VI Title V Operating Permit Program, and Title V of the CAA.

235.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

## FOURTEENTH CLAIM FOR RELIEF: FAILURE TO REPORT NONCOMPLIANCE IN QUARTERLY REPORTS

**Applicable Violations: 1) NSPS General Provisions, 2) NSPS Subpart GG 3) 1994 PSD Permit, 4) 2001 PSD Permit, 5) St. Thomas Consolidated PSD Permit, 6) St. Thomas Title V Operating Permit, 7) the VI Title V Operating Permit Program, 8) Title V of the CAA, and 7) the Unit 23 PSD Permit**

236.    Paragraphs 1 - 235 are realleged and incorporated herein by reference.

237.    40 C.F.R. § 60.7(c) of the NSPS General Provisions requires each owner or operator subject to an NSPS who is required to install a continuous monitoring device to submit, to EPA, semiannually, excess emissions and monitoring systems performance reports unless more frequent reporting is specifically required by a specific subpart or by the Administrator on a case by case basis to accurately assess the compliance status of the source.

238.    40 C.F.R. § 60.334(j) of the NSPS Subpart GG requires that for each affected unit that elects to continuously monitor parameters or emissions, the owner or operator shall submit reports of excess emissions and monitor downtime, in accordance with §60.7(c). Excess emissions shall be reported for all periods of unit operation, including startup, shutdown and malfunction.

239.    At all relevant times, VIWAPA was and is required to submit to EPA, excess $NO_X$ emissions reports and to monitor downtime in accordance with 40 C.F.R. § 60.334(j) of the NSPS Subpart GG.

240.    At all relevant times, VIWAPA was and is required to provide on a quarterly basis, all hours of excess $NO_X$ emissions by, depending on the date, the 1994 PSD Permit, the 2001 PSD Permit, the St. Thomas Consolidated PSD Permit, and the Unit 23 PSD Permit.

241.    At all relevant times, VIWAPA was and is required, on a quarterly basis, to report all noncompliance at Units 15, 18, 22, and the HRSG by the St. Thomas Title V Operating Permit.

242.    At all relevant times, VIWAPA submitted NSPS reports on a quarterly basis as required by and concurrently with PSD Quarterly Reports.

243.    VIWAPA's Responses to the April 2009, March 2010, May 2010 and January 2012 Requests; the PSD Quarterly Reports submitted pursuant to the 1994 PSD Permit, the 2001 PSD Permit, the St. Thomas Consolidated and the Unit 23 Permit; and the quarterly NSPS Reports indicate that VIWAPA failed to identify all excess $NO_X$ emissions at Units 15, 18, 22, 23 and the HRSG from at least October 1, 2005 to at least December 31, 2012.

244.    Each of VIWAPA's failures to submit PSD Quarterly Reports identifying excess $NO_X$ emissions associated with Units 15, 18, 22, and the HRSG is a violation of the NSPS General Provisions, NSPS Subpart GG, the St. Thomas Title V Operating Permit, the VI Title V Operating Permit Program, and Title V of the CAA.

245.    Depending on the date, each of VIWAPA's failures to submit the PSD Quarterly Reports identifying excess $NO_X$ emissions associated with Units 15, 18, 22, and the HRSG is a violation of the 1994 PSD Permit, the 2001 PSD Permit, or the St. Thomas Consolidated PSD Permit.

246.    Each of VIWAPA's failures to submit PSD Quarterly Reports identifying excess $NO_X$ emissions associated with Unit 23 is a violation of the NSPS General Provisions, NSPS Subpart GG, and the Unit 23 PSD Permit.

247.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

## FIFTEENTH CLAIM FOR RELIEF: FAILURE TO REPORT NONCOMPLIANCE IN NSPS SEMIANNUAL REPORTS FOR UNIT 25

**Applicable Violations: 1) NSPS General Provisions, and 2) NSPS Subpart KKKK**

248.    Paragraphs 1 - 247 are realleged and incorporated herein by reference.

249.    An owner or operator of a facility that utilizes stationary gas turbines subject to NSPS Subpart KKKK must comply with both NSPS Subpart KKKK and the NSPS General Provisions, unless otherwise specified in NSPS Subpart KKKK.  40 C.F.R. §§ 60.1, 60.7(h) and 60.4305

250.    40 C.F.R. § 60.4375(a) of NSPS Subpart KKKK requires each affected unit that is required to continuously monitor  parameters or emissions, or that is required to periodically determine the fuel sulfur content, to submit reports of excess emissions and monitor downtime, in accordance with § 60.7(c).  Excess emissions must be reported for all periods of unit operation, including start-up, shutdown, and malfunction.

251.    At all relevant times, VIWAPA was and is required by 40 C.F.R. § 60.7(c) of the NSPS General Provisions to semiannually submit NSPS excess emission.

252.    At all relevant times, VIWAPA was and is required by the NSPS General Provisions and NSPS Subpart KKKK to continuously monitor parameters or emissions; to periodically determine the fuel sulfur content under the NSPS Subpart KKKK; and to submit semiannual reports of excess emissions and monitor downtime.

253.    VIWAPA failed to submit semiannual excess emission and monitor downtime reports to EPA for Unit 25 for the operating period of March 15, 2012 through June 30, 2013 for the St. Thomas Facility.

254.    Each of VIWAPA's failures to submit semiannual excess emission and monitor downtime reports is a violation of NSPS General Provisions and Subpart KKKK.

255.    For each violation referenced in this claim, VIWAPA is subject to injunctive

relief and penalties as set forth in Paragraph 63.

## SIXTEENTH CLAIM FOR RELIEF: FAILURE TO COMPLY WITH GENERAL DUTY REQUIREMENT

**Applicable Violations: 1) NSPS General Provisions, 2) 1994 PSD Permit, 3) 2001 PSD Permit, 4) St. Thomas Consolidated PSD Permit, 5) St. Thomas Title V Operating Permit, and 6) Unit 23 PSD Permit**

256.    Paragraphs 1 - 255 are realleged and incorporated herein by reference.

257.    At all relevant times, VIWAPA was and is required to comply with 40 C.F.R. § 60.11(d), the General Duty Requirement contained in the NSPS General Provisions.

258.    At all relevant times, VIWAPA was and is required to comply with, depending upon the date, either the 1994 PSD Permit, the 2001 Permit, or the St. Thomas Consolidated Permit, and the Unit 23 Permit, all of which require VIWAPA to comply with the NSPS General Provisions.

259.    At all relevant times, VIWAPA was and is required to comply with the St. Thomas Title V Operating Permit, which requires compliance with the NSPS General Provisions.

260.    VIWAPA's failures at Units 15 and 22 as detailed in Claims 1, 2 and 7 to 14 above, to: a) operate and/or properly operate the water injection system to control $NO_X$ emissions; b) conduct RATAs and CGAs at the CEMs and COMS; c) calibrate, maintain, and operate CEMS and COMS; d) conduct stack testing every thirty months; and e) provide EPA reports on its emission exceedences are each violations of the General Duty Requirement contained in the NSPS General Provisions, the St. Thomas Title V Operating Permit, the 1994 PSD Permit, the 2001 PSD Permit and the St. Thomas Consolidated PSD Permit.

261.    VIWAPA's failures at Unit 18 as detailed in Claims 1, 2, and 7 to 14 above, to: a) operate and/or properly operate the water injection system to control $NO_X$ emissions; b) conduct RATAs and CGAs at CEMS and COMS; c) calibrate, maintain, and operate CEMS and COMS;

42

d) conduct stack testing every thirty months; and e) provide EPA with report on its emission exceedances are each violations of the General Duty Requirement contained in the NSPS General Provisions, the St. Thomas Title V Operating Permit, the 1994 PSD Permit, the 2001 PSD Permit and the St. Thomas Consolidated PSD Permit.

262.    VIWAPA's failures at Unit 23 as detailed in Claims 1, 2 and 7 to 14 above, to:  a) operate and/or properly operate the water injection system to control $NO_X$ emissions; c) conduct RATAs and CGAs on CEMS and COMS; c) calibrate, maintain, and operate CEMS and COMS; d) conduct stack testing every thirty months; and e) report on its emission exceedances are each violations of the General Duty Requirement contained in the General Duty Provisions, and the Unit 23 PSD Permit.

263.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

## SEVENTEENTH CLAIM FOR RELIEF: FAILURE TO COMPLY WITH RICE NESHAP
### Applicable Violations: 1) NESHAP General Provisions, 2) RICE NESHAP, 3) VI Title V Operating Permit Program, and 4) Title V of the CAA

264.     Paragraphs 1 - 263 are realleged and incorporated herein by reference.

265.    The NESHAP General Provisions, 40 C.F.R. § 63.1(a)(4)(i), requires that each relevant standard must explicitly identify each provision found in the General Provisions, and indicate whether each provision is or is not included in the relevant standard.

266.    The RICE NESHAP is found at 40 C.F.R. Part 63, Subpart ZZZZ, §§ 63.6580-63.6675.

267.    Table 8 to the RICE NESHAP provides that, among other things, a notification of compliance status, quality assurance/test plan, performance specifications, monitoring, and reporting requirements contained in the NESHAP General Provisions are included in the RICE

NESHAP.

268.    40 C.F.R. § 63.9(h)(2)(i) of the NESHAP General Provisions provides that the owner or operator of an affected source must submit, to EPA, a notification of compliance status. The notification must include, but is not limited to, the methods that were used to determine compliance, the results of any performance tests, the methods that will be used for determining continuing compliance, the type and quantity of hazardous air pollutants emitted by the source, and a description of the air pollution control equipment (or method) for each emission point, including each control device (or method) for each hazardous air pollutant and the control efficiency (percent) for each control device (or method).

269.    Pursuant to 40 C.F.R. § 63.6585(b), a major source of HAP emissions is a plant site that emits or has the potential to emit any single HAP at a rate of 10 tons (9.07 megagrams) or more per year or any combination of HAP at a rate of 25 tons (22.68 megagrams) or more per year.

270.    Pursuant to 40 C.F.R. § 63.6585(c), an area source of HAP emissions is a source that is not a major source.

271.    Pursuant to 40 C.F.R. § 63.6590(a)(1)(iii), a stationary RICE located at an area source of HAP emissions, is an existing stationary RICE if construction or reconstruction was commenced on the stationary RICE before June 12, 2006.

272.    Pursuant to 40 C.F.R. § 63.6595(a), an existing stationary RICE, must comply with the applicable emission limitations, operating limitations, and other requirements of the RICE NESHAP no later than May 3, 2013.

273.    Pursuant to 40 C.F.R. § 63.6595(c), affected sources must meet the applicable notification requirements in 40 C.F.R. § 63.6645 and in the NESHAP General Provision.  The

applicable notifications in the NESHAP General Provisions are: 40 C.F.R. §§ 63.7(b) and (c), 63.8(e), (f)(4) and (f)(6), 63.9(b) through (e), and (g) and (h).

274.    Pursuant to 40 C.F.R. § 63.6603(a), an existing stationary RICE, must limit or reduce CO or formaldehyde emissions in accordance with Table 2b of the RICE NESHAP.

275.    Pursuant to 40 C.F.R § 63.6604, a "non-emergency, non-black start CI [compression ignition] stationary RICE with a site rating of more than 300 brake HP with a displacement of less than 30 liters per cylinder that uses diesel fuel," "must use diesel fuel that meets the requirements in 40 C.F.R. § 80.510(b) for nonroad diesel fuel."

276.    Pursuant to 40 C.F.R § 63.6612(a), an existing stationary RICE must conduct any initial performance test or other initial compliance demonstration in accordance with Table 4 of the RICE NESHAP (performance testing requirements), and Table 5 of the RICE NESHAP (continuous monitoring requirements), within 180 days after the compliance date that is specified in 40 C.F.R. § 63.6595 and according to the provisions in 40 C.F.R. § 63.7(a)(2).

277.    Pursuant to 40 C.F.R. § 63.6650(a) a facility must submit, to EPA, each report in Table 7 of the RICE NESHAP that applies.

278.    At all relevant times, the diesel engine at the St. John Facility was and is an existing stationary RICE.

279.    At all relevant times, the St. John Facility was and is required to comply with the requirements of the RICE NESHAP.

280.    At all relevant times, the St. John Facility is an area source of HAP emissions within the meaning of the RICE NESHAP.

281.    At all relevant times, VIWAPA has been and continues to be required to comply with notification requirements of the NESHAP General Provision.

282.    VIWAPA failed to include the RICE NESHAP as an applicable requirement in its Title V Operating Permit or its renewal application.

283.    VIWAPA's failures, from May 3, 2013 to at least December 31, 2013, to submit the initial notification of compliance status, the performance test notification requirements and to conduct the performance testing, monitoring, and reporting are each a violation of the NESHAP General Provisions specified in the RICE NESHAP.

284.    Each of VIWAPA's failures, from May 3, 2013 to at least December 31, 2013, to notify EPA of its RICE NESHAP compliance status, to reduce either CO or formaldehyde emissions in accordance with Table 2b, use diesel fuel that meets required specifications, and conduct semi-annual and annual reporting is a violation of the RICE NESHAP.

285.    VIWAPA's failure to include the RICE NESHAP in the St. John Title V Operating Permit application is a violation of the VI Title V Operating Permit Program and Title V of the CAA.

286.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

## EIGHTEENTH CLAIM FOR RELIEF: FAILURE TO TIMELY SUBMIT ST. JOHN TITLE V RENEWAL APPLICATION AND OPERATION WITHOUT A TITLE V OPERATING PERMIT

**Applicable Violations:  1) VI Title V Operating Permit Program, and 2) Title V of the CAA**

287.    Paragraphs 1 - 286 are realleged and incorporated herein by reference.

288.    Pursuant to Section 206-61(d) of subchapter 206 of Chapter 9 of the VI-APCAR&R, VIWAPA was required to submit an application to renew the St. John Title V Operating permit at least 6 months prior to April 28, 2010.

289.    VIWAPA did not submit a renewal application for the St. John Title V Operating Permit to VIDPNR until May 25, 2010.

290.    VIWAPA's failure to timely submit the St. John Title V Operating Permit renewal application is a violation of the VI Title V Operating Permit Program and Title V of the CAA.

291.    VIWAPA's failure to timely submit the St. John Title V Operating Permit renewal application results in the St. John Facility operating without a Title V Operating Permit in violation of the VI Title V Operating Permit Program and Title V of the CAA.

292.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

### NINTEENTH CLAIM FOR RELIEF: FAILURE TO CONDUCT STACK TESTING EVERY THIRTY MONTHS AT ST. JOHN FACILITY
**Applicable Violations: 1) St. John Title V Operating Permit, 2) Title V of the Act, and 3) the VI Title V Operating Permit Program**

293.    Paragraphs 1 - 292 are realleged and incorporated herein by reference.

294.    At all relevant times, before the St. John Title V Operating Permit expired, the St. John Title V Operating Permit required VIWAPA to conduct stack testing every thirty months for $NO_X$ and $PM_{10}$ emissions from the diesel engine.

295.    VIWAPA's Responses to the April 2009, May 2010 and January 2013 Requests indicate that, VIWAPA failed to conduct a stack test for $NO_X$ and $PM_{10,}$ from the stack associated with the diesel engine, in October 2007 and April 2010.

296.    Each of VIWAPA's failures to conduct stack testing on the diesel engine at the St. John Facility violated the St. John Title V Operating Permit, Title V of the CAA, and the VI Title V Operating Permit Program.

297.    For each violation referenced in this claim, VIWAPA is subject to injunctive relief and penalties as set forth in Paragraph 63.

## REQUEST FOR RELIEF

298.    WHEREFORE, based upon all the allegations set forth above, the United States respectfully requests that this Court:

a.    Assess a civil penalty against VIWAPA of up $32,500 per day for each violation on or between March 15, 2004 and January 12, 2009; and $37,500 per day for each violation occurring thereafter;

b.    Permanently enjoin VIWAPA from operating the St. Thomas Facility except in accordance with the CAA, its regulatory provisions, and permits issued thereunder, including the NSPS General Provisions, the NSPS Subpart GG Provisions, the St. Thomas Consolidated PSD Permit, the Unit 23 PSD Permit, the Unit 25 Operating Permit, and the  St. Thomas Title V Operating Permit;

c.    Enjoin VIWAPA from operating the St. John Facility until it has obtained a Title V Operating Permit;

d.    Require VIWAPA to comply with the NSPS and PSD emission limits for $NO_X$ by operating the water injection systems for Units 15, 18, 22, 23, and the HRSG in accordance with the water-to-fuel ratio established pursuant to the St. Thomas Consolidated PSD Permit and the Unit 23 PSD Permit;

e.    Require VIWAPA to amend the St. Thomas Title V Operating Permit to include the water-to-fuel ratios and to modify the St. Thomas Title V Operating Permit each time the water-to-fuel ratios change;

f.    Require VIWAPA to comply with the Sulfuric Acid Mist Emission Limit for Unit 23 as set in the Unit 23 PSD Permit;

g.    Require VIWAPA to comply with the $PM_{10}$ Emission Limit for Unit 18 as set in

the St. Thomas Consolidated PSD Permit and the St. Thomas Title V Operating Permit;

h.       Require VIWAPA to comply with the VOC Emission Limit for Unit 18 as set in the St. Thomas Consolidated PSD Permit and the St. Thomas Title V Operating Permit;

i.       Require VIWAPA to comply with the VI Opacity Rule for Boiler 11, and Units 12 and 14 pursuant to the Virgin Islands State Implementation Plan, the CAA and the St. Thomas Title V Operating Permit;

j.       Require VIWAPA to perform RATAs and CGAs in accordance with the procedures specified in 40 C.F.R. Part 60, App. F, as required by St. Thomas Consolidated PSD Permit and the Unit 23 PSD Permit;

k.       Require VIWAPA to calibrate, maintain and operate $NO_X$ CEMS, CO CEMS, and opacity COMS in accordance with the NSPS Subpart GG Provisions, the St. Thomas Consolidated PSD Permit, the Unit 23 PSD Permit, and the St. Thomas Title V Operating Permit;

l.       Require VIWAPA to maintain quarterly PSD quality data availability for all opacity monitors and gaseous emission monitors in accordance with the St. Thomas Consolidated PSD Permit, the Unit 23 PSD Permit and the St. Thomas  Title V Operating Permit;

m.       Require VIWAPA to conduct stack testing every 30 months in accordance with the St. Thomas Title V Operating Permit;

n.       Require VIWAPA to maintain and to make available, upon request, accurate emission monitoring records in accordance with the St. Thomas Consolidated PSD Permit, the Unit 23 PSD Permit and the St. Thomas  Title V Operating Permit;

o.       Require VIWAPA to report noncompliance in quarterly reports in accordance

49

with the NSPS General Provisions, the St. Thomas Consolidated PSD Permit, the Unit 23 PSD

Permit, and the St. Thomas Title V Operating Permit;

p.      Require VIWAPA to report noncompliance in NSPS semiannual reports in

accordance with NSPS General Provisions, NSPS Subpart KKKK and the Unit 25 Operating

Permit;

q.      Require VIWAPA to the extent practicable, maintain and operate any affected

facility including associated air pollution control equipment in a manner consistent with good air

pollution control practice for minimizing emissions;

r.      Require VIWAPA to comply with the RICE NESHAP requirements, which

include, but are not limited to, notification, monitoring, performance testing, emission limit, fuel

specification, and reporting requirements;

s.      Order VIWAPA to take other appropriate actions to remedy, mitigate, and offset

the harm to public health and the environment caused by the violations of the CAA alleged

above; and

t.      Grant such other relief as the Court deems just and proper.

Respectfully Submitted,


FOR THE UNITED STATES OF AMERICA

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice



 /s/ Myles E. Flint, II
MYLES E. FLINT, II
Senior Counsel
LAURA ROWLEY
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 307-1859
(202) 616-8763
Myles.Flint@usdoj.gov
Laura.Rowley@usdoj.gov


RONALD W. SHARPE
United States Attorney
District of the Virgin Islands

JOYCELYN HEWLETT
Assistant United States Attorney
District of the Virgin Islands
Federal Building and U.S. Courthouse
5500 Veterans Drive, Room 260
St. Thomas, U.S. Virgin Islands 00802


OFCOUNSEL:
DENISE LEONG
Office of Regional Counsel
United States Environmental Protection Agency
Region 2
290 Broadway
New York, NY 10007-1866